1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| SOS CO., INC., et al., | Case No. CV 16-09667-AB (AFMx) |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| E-COLLAR TECHNOLOGIES, INC., et al., | |
| Defendants. | |

18          Before the Court is Defendants, E-Collar Technologies, Inc. ("ECT") and Greg

19   Van Curen's ("Van Curen") (collectively, "Defendants"), Motion to Dismiss (Dkt.

20   No. 31, Defendants' Motion to Dismiss Second Amended Complaint (hereinafter,

21   "Mot.")).  Plaintiffs SOS Co., Inc., dba Dogta ("Dogtra USA"), and Dogtra Co., Ltd.

22   ("Dogtra Korea") (collectively, "Plaintiffs") filed an Opposition and Defendants filed

23   a Reply.[1]  The Court heard oral argument on October 6, 2017.  For the following

24   reasons, the Motion is **GRANTED**.

25

26   ---

[1] Both parties, but especially Plaintiffs, used excessively long footnotes to present
27   legal argument and authority and thereby evaded the page limits. **The Court warns
the parties that future memoranda with similarly excessive footnotes may be
28   stricken.**

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2        **A. Plaintiffs' Second Amended Complaint**

3        Plaintiff Dogtra Co., Ltd. ("Dogtra Korea") is a Korean corporation with its

4    principal place of business in South Korea.  (Second Amended Complaint (Dkt. No.

5    30, hereinafter, "SAC") ¶ 1.)  Dogtra Korea develops, manufactures, distributes, and

6    sells high quality training collars for dogs.  (SAC ¶ 11.)  The company was founded in

7    1984 in South Korea by Mr. Ho Yun So ("Yun So").  (SAC ¶ 12.)  In 1995, Dogtra

8    Korea expanded its operations, founding SOS Co., Inc., dba Dogtra ("Dogtra USA")

9    in Fountain Valley, California.  (SAC ¶ 13.)  Dogtra USA is a subsidiary of Dogtra

10   Korea.  (SAC ¶ 13.)  In 1999, Yun So hired his brother, Mark So, to work at Dogtra

11   Korea as its corporate vice president.  (SAC ¶ 14.)  In his capacity as vice president,

12   Mark So was responsible for assisting with the development and marketing of Dogtra

13   products intended for distribution and sales in the United States.  (SAC ¶ 14.)  Mark

14   So was privy to Dogtra's confidential and proprietary information, involving a wide

15   range of technologies used in Dogtra's products.  (SAC ¶ 15.)  Dogtra shared its

16   proprietary information only with known and trusted employees, officers, and/or

17   agents of the company.  (SAC ¶ 91.)  Access to Dogtra Trade Secrets[2] was strictly

18   limited to a need-to-know basis.  (SAC ¶ 91.)

19       In 2003, Mark So was assigned to Dogtra USA as vice president of sales

20   without formally relinquishing his position at Dogtra Korea.  (SAC ¶ 16.)  Through

21   his positions in both Dogtra Korea and Dogtra USA, Mark So acquired knowledge of

22   many aspects of Dogtra's business practices, including product research and

23   development, manufacturing sources, marketing plans, distribution and sales

24   operations, company profits, and intellectual property maintenance.  (SAC ¶ 16.)

25       In or about 2009, after Dogtra's founder became terminally ill, he ordered that

26   

27   ─────────────────
     [2] Here, the Court is merely reproducing Plaintiffs' allegations as to trade secrets, and
     not making a determination whether the information in question constitutes a trade
28   secret.

Mark So facilitate transfer of management responsibilities from the older generation within the family, to the younger generation, some of whom had already been working with the company.  (SAC ¶ 23.)  In April 2009, Mark So's position was changed from Dogtra's Vice President to "Advisor."  (SAC ¶ 23.)  His main responsibilities in this new capacity were to (1) advise and assist the next generation of officers; and, (2) ensure a smooth transition so that the company would be on sound footing after the older generation moved on.  (SAC ¶ 23.)  Mark So's employment with Dogtra ended on December 31, 2010.  (SAC ¶ 24.)

Plaintiffs contend that Mark So was so upset that he was not chosen by Dogtra's founder to assume control of Dogtra, that he used his time as Advisor to plot the creation of multiple companies in the United States and in South Korea to compete against Dogtra.  (SAC ¶ 26.)  While still employed at Dogtra, Mark So worked with Dogtra employees and used the resources of a separate company, Daehan Jeonja ("Daehan"), to develop a prototype electronic collar by the summer of 2010.  (SAC ¶ 30.)  Before 2009, Daehan had not previously produced or sold electronic training collars.  (SAC ¶ 67.)  Together with Van Curen, Mark So assisted and advised on the technical features and production process of the prototype collar, which was designed specifically for the United States market.  (SAC ¶ 30.)

Mark So filed no fewer than five patent applications within one year of leaving Dogtra, including one that was filed while he was still employed by Dogtra, entitled "Remote Animal Training System Using Voltage-To-Frequency Conversion."  (SAC ¶ 113).  The Dogtra employees who assisted Mark So and Van Curen ("Departed Employees") eventually left Dogtra to work with Defendants in their subsequent business ventures.  (SAC ¶ 31.)  Plaintiffs claim that while Mark So served as a high-level officer of Dogtra, he actively recruited current and past employees of Dogtra to work for Defendants.  (SAC ¶ 116.)  They also claim that Defendants continue to use Departed Employees to try to persuade existing Dogtra employees to leave Dogtra.  (SAC ¶ 31.)

1    In Spring 2011, Mark So and Van Curen formed two new companies to further
2    carry out their alleged scheme against Dogtra.  (SAC ¶ 33.)  In South Korea, they
3    formed CND Micro ("CND") on April 22, 2011.  (SAC ¶ 33.)  On May 9, 2011, they
4    incorporated ECT in the United States.  (SAC ¶ 33.)  CND develops, manufactures,
5    and supplies electronic dog collars to ECT, while ECT serves as the new products'
6    marketing, sales, and customer services arm in the United States.  (SAC ¶ 33.)  ECT
7    does business, among other means, through its current website (www.ecollar.com).
8    (SAC ¶ 33.)  Plaintiffs claim that before ECT and CND were incorporated,
9    Defendants had developed and manufactured a new line of electronic dog training
10   collars that directly competed with Dogtra products.  (SAC ¶ 38.)  Defendants began
11   to market and sell these products on or about September 2011.  (SAC ¶ 38.)  Plaintiffs
12   contend that Defendants would not have been able to bring the competing products to
13   market in the United States in a such short period of time (only nine months after
14   Mark So left Dogtra), without the competitive advantages or trade secrets that Mark
15   So misappropriated from Dogtra and shared with the other Defendants.  (SAC ¶ 39.)

16   Plaintiffs allege that Mark So and Van Curen ("Individual Defendants") jointly
17   own and operate CND and ECT ("Entity Defendants") or serve as directors and/or
18   officers for both corporations either directly or by proxy.  (SAC ¶ 42.)  The Individual
19   Defendants operate their business by sharing resources, including business locations,
20   officers, and employees, such as the Departed Employees that Defendants had hired
21   and who moved from Daehan to CND.  (SAC ¶ 42.)  Plaintiffs also allege that the
22   Individual Defendants have comingled the Entity Defendants' corporate funds with
23   their own personal funds and/or funds of other businesses.  (SAC ¶ 43.)

24   Plaintiffs contend that Mark So and Van Curen are alter egos for the corporate
25   entities which they control because there is a unity of interest and ownership between
26   the Entity Defendants and the Individual Defendants, such that the individuality and
27   separateness of corporate defendants have ceased.  (SAC ¶ 45.)  Unity of interest is
28   established because: (1) Individual Defendants have a history of failing to respect

4.

corporate formalities; (2) Entity Defendants share key officers, legal owners, and/or equitable owners (Mark So's son, Minchul So, is currently Vice President of ECT and an officer of CND); (3) Individual Defendants appoint key officers, including their own family, without regard to professional qualifications for said officers; (4) Entity Defendants share employees and other resources; (5) Individual Defendants control the finances of CND and ECT; (6) Individual Defendants have a history of sharing legal representation; and, (8) Entity Defendants are mere shells and/or conduits for Individual Defendants to exploit the wrongdoings alleged in the SAC.  (SAC ¶ 46.) Plaintiffs claim that not considering Individual Defendants as alter egos of the Entity Defendants, will produce inequitable results because it would allow Mark So and Van Curen to deplete corporate funds, thus preventing Dogtra from executing any judgment against them.  (SAC ¶ 48.)

### B. The Previous Action

In their SAC, Plaintiffs refer to the present suit as a "continuation" of a complaint filed in this district by Dogtra USA in April of 2012 (the "Previous Action").  (SAC ¶ 49.)  In April 2012, Dogtra USA filed a complaint in this district against ECT and Mark So, alleging several counts of patent infringement, misappropriation of trade secrets, unfair competition, and breach of fiduciary duty. *See* Request for Judicial Notice ("RJN," Dkt. No. 33), Ex. 1.[3]  In December 2012, Dogtra USA filed its Second Amended Complaint in that action, still alleging patent infringement, misappropriation of trade secrets, and unfair competition, against ECT and Mark So, and breach of fiduciary duty, against Mark So.  (RJN, Ex. 2.)

On February 2, 2015, Plaintiff Dogtra USA and Defendants ECT and Mark So stipulated to a dismissal of all their claims and counterclaims so they could proceed with mediation.  (RJN, Ex. 3.)  As part of the dismissal proceedings, the parties drew up an agreement setting forth various terms governing their respective rights regarding

---

[3]  The Court **GRANTS** Defendants' Request for Judicial Notice.  (Dkt. No. 33.)

1   future litigation.  (*See* Dkt. No. 41-1, Sealed Declaration in Support of Application to

2   File Document Under Seal, Exhibit 1 (hereinafter, "Tolling Agreement").)  The

3   Tolling Agreement stated that the Defendants in that suit, ECT and Mark So, agreed to

4   waive any statute of limitations defense with regard to any claim brought in that

5   lawsuit.  (Tolling Agreement at 1.)  Dogtra Korea and Greg Van Curen were not

6   parties to the Previous Action.  (*See* Ex. 2.)  Their names do not appear on the face of

7   the Second Amended Complaint in the Previous Action or on the subsequent Tolling

8   Agreement.  (*See* Ex. 2; Tolling Agreement.)

9          In June 2015, Dogtra USA entered into mediation with Mark So and Van

10  Curen, who appeared on behalf of ECT.  *See* Decl. of Gerald Kim ("Kim Decl." (Dkt.

11  No. 41),  ¶ 2.  Mark So and ECT agreed to provide information to Dogtra to assist its

12  assessment of the dispute between the parties.  (Kim Decl. ¶ 2.)  Plaintiffs claim that

13  Dogtra never received the promised information, but continued its investigation into

14  the activities of Mark So and ECT, even after the mediation failed.  (Kim Decl. ¶¶ 3,

15  6.)  Plaintiffs maintain that it has been very difficult for them to contact third parties,

16  particularly former Dogtra employees that left to join ECT or CND, because many of

17  them reside in South Korea and have purposely avoided any communication with

18  Dogtra.  (Kim Decl. ¶ 5; SAC ¶¶ 137, 142.)  According to Plaintiffs, when these

19  employees left Dogtra's employment, they lulled Plaintiffs into a false belief that they

20  were merely expressing their legal right to seek and obtain employment elsewhere.

21  (SAC ¶ 137.)

22         Plaintiffs also claim that they could have not reasonably discovered Mark So's

23  interference with the employee relationships because he took all his personal records

24  with him when he left Dogtra.  (SAC ¶ 139.)  Additionally, as a matter of standard

25  procedure, Dogtra deleted all of its records regarding Mark So upon his departure.

26  (SAC ¶ 139.)  Plaintiffs claim that they were only able to obtain the information

27  supporting their interference claims in 2016, when they were finally able to locate the

28  Departed Employees and discuss the circumstances of their departures from Dogtra.

(SAC ¶ 142.)  This is why, according to Plaintiffs, they were only able to file the current lawsuit at the end of 2016.  (*See* SAC.)

### C. Procedural Background

Plaintiffs Dogtra Korea and Dogtra USA filed their Complaint on December 31, 2016.  (Dkt. No. 1.)   The parties stipulated to Plaintiffs filing First and Second Amended Complaints (Dkt. Nos. 20, 26), the latter of which was filed on August 7, 2017, and which alleges seven causes of action[4]: (1) Misappropriation of Trade Secrets, against all Defendants; (2) Breach of Fiduciary Duty, against Mark So; (3) Intentional Interference with Contractual Relations, against all Defendants; (4) Intentional Interference with Prospective Economic Advantage ("Business Interference"), against all Defendants; (5) Negligent Interference with Prospective Economic Advantage, against Mark So; (6) Conspiracy, against all Defendants; and, (7) Unfair Competition, against all Defendants.  (*See* SAC.)

On August 28, 2017, Defendants ECT and Greg Van Curen filed their Motion to Dismiss the SAC.  Defendants argue that the claims are barred by the statute of limitations and are not adequately pled under Rule 12(b)(6).  They also argue that venue for the interference claims does not lie in the Central District of California and seek dismissal or transfer of those claims.

## II.   LEGAL STANDARD

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the

---

[4] Plaintiffs have named four Defendants in this action: two Entity Defendants, ECT and CND; and two Individual Defendants, Mark So and Greg Van Curen.  (*See* SAC.) As of this Order, Mark So and CND have not been served and have not appeared.

1  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility
2  standard is not akin to a 'probability requirement,' but it asks for more than a sheer
3  possibility that a defendant has acted unlawfully." *Id.*  Labels, conclusions, and "a
4  formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting
5  *Twombly*, 550 U.S. at 555).

6       Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may
7  move to dismiss a pleading for "failure to state a claim upon which relief can be
8  granted." Fed. R. Civ. P. 12(b)(6).  When ruling on a Rule 12(b)(6) motion, "a judge
9  must accept as true all of the factual allegations contained in the complaint." *Erickson*
10 *v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal
11 conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation
12 marks omitted).  Rule 12(b)(6) also allows a court to dismiss a claim in the complaint
13 sua sponte if it appears that the plaintiff cannot prevail on the claim as alleged.  *See*
14 *Omar v. Sea–Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may
15 dismiss a claim sua sponte under [Rule] 12(b)(6). Such a dismissal may be made
16 without notice where the claimant cannot possibly win relief.").

17    **III.    DISCUSSION**

18        **A. Plaintiffs' Claim for Misappropriation of Trade Secrets Against**
19            **Defendant Van Curen Is Time-Barred.**

20        Van Curen argues that Plaintiffs' misappropriation claim against him is barred
21 by the statute of limitations.  The statute of limitations for misappropriation of trade
22 secrets under the California Uniform Trade Secrets Act is three years after the
23 misappropriation is discovered or by the exercise of reasonable diligence should have
24 been discovered.  Cal. Civ. Code § 3426.6.  Plaintiffs knew of the misappropriation no
25 later than April 2012 when they filed they Previous Action alleging essentially the
26 same facts concerning misappropriation of trade secrets.  (*See* Ex. 2.)  This action was
27 filed more than three years later, on December 31, 2016, so the misappropriation
28 claim is untimely.  Plaintiffs contend that the statute of limitations does not apply

1    because Van Curen is bound by the 2015 Tolling Agreement, or, in the alternative, the

2    discovery rule applies because they could not have reasonably discovered Van

3    Curen's role before the statute had run.

### 1. Van Curen Is Not Bound by The 2015 Tolling Agreement.

5    The Previous Action included a claim for Misappropriation of Trade Secrets.

6    (*See* Ex. 2.)  We can infer from this that Plaintiffs were aware of the facts that gave

7    rise to the misappropriation claim during the Previous Action and would, in the

8    absence of some exception, be time barred from asserting it against Van Curen.  Van

9    Curen was *not* a party to the Previous Action and his name does not appear on the

10   2015 Tolling Agreement between Dogtra USA and ECT.  (*See* Ex. 2; Tolling

11   Agreement.)  Thus, Van Curen cannot be bound by an agreement he was not party to

12   as part of a litigation he was not a party to.

13   Plaintiffs, however, contend that Van Curen is bound by the agreement because

14   he is an alter ego of ECT.  (Opp'n at 8.)  There are two steps Plaintiffs must

15   successfully argue to establish this theory and avoid the statute of limitations.  First,

16   Plaintiffs must establish that alter egos can be bound by tolling agreements to which

17   they were not a party.  Second, Plaintiffs must sufficiently plead alter ego liability

18   with respect to Van Curen and ECT.

19   While Plaintiffs have not offered the Court satisfactory authority on whether

20   alter egos can be bound specifically by a Tolling Agreement they were not a party to,

21   the Court has found authority for the proposition that alter egos can be bound by a

22   contract they were not a party to.  *See Sheet Metal Worker Int'l Ass'n Local No. 359 v.*

23   *Ariz. Mech. & Stainless, Inc.,* 863 F.2d 647, 651 (9th Cir. 1988) (holding alter ego

24   theory contractually binds successor companies, and that a collective bargaining

25   agreement between a union and a non-signatory's alter ego will bind the non-

26   signatory); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d

27   1483, 1490 (9th Cir. 1983) (finding that where alter ego doctrine applies, when one

28   corporation is released from liability, so is the other).  The Eighth Circuit has also held

1  that a breach of contract claim could proceed if a defendant was an alter ego or

2  successor in interest to a party to the contract. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill*

3  *Dr., Inc.*, 336 F.3d 801, 804–5 (8th Cir. 2003). "The effect of applying the alter ego

4  doctrine is that the corporation and the individual who dominates it are treated as one

5  person, so that any act committed by one is attributed to both, and if either is bound,

6  by contract, judgment, or otherwise, both are equally bound. . . ." *Dudley v. Smith*,

7  504 F.2d 979, 982 (5th Cir. 1974) (internal citation and quotation omitted).

8      Since a Tolling Agreement is nothing but a contract governing the parties'

9  respective rights regarding future litigation, all alter egos of ECT would be bound by

10  it. The question then becomes whether Plaintiffs have pled facts sufficient to establish

11  that Van Curen is an alter ego of ECT.  They have not.

12      "The alter ego doctrine arises when a plaintiff comes into court claiming that an

13  opposing party is using the corporate form unjustly and in derogation of the plaintiff's

14  interests." *Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104, 1136–5 (C.D.

15  Cal. 2015). "The purpose of the doctrine is to bypass the corporate entity in order to

16  avoid injustice. Its essence … is that justice be done[,] … [and t]hus the corporate

17  form will be disregarded only in narrowly defined circumstances and only when the

18  ends of justice so require." *Id.* at 1136.

19      "To. . . . satisfy the alter ego exception, […] the plaintiff must make out a prima

20  facie case that (1) there is such unity of interest and ownership that the separate

21  personalities [of the two entities] no longer exist and (2) that failure to disregard [their

22  separate identities] would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d

23  915, 926 (9th Cir. 2001) (citation and quotation omitted). "The purpose of the

24  doctrine is to bypass the corporate entity in order to avoid injustice." *Gerritsen*, 116

25  F. Supp. 3d at 1136. "Conclusory allegations of 'alter ego' status are insufficient to

26  state a claim. Rather, a plaintiff must allege specific facts supporting both of the

27  necessary elements." *Id*.

28      "A plaintiff can plead a number of different factors to show unity of interest.

Among the factors to be considered in applying the doctrine are the comingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Id*. at 1137 (citations and quotations omitted). "No single factor is determinative and a court must examine all the circumstances to determine whether to apply the doctrine." *Id.* (citation omitted).

Here, Plaintiffs have offered a number of allegations to support the unity of interest between Van Curen and ECT. (*See* SAC ¶¶ 43, 46.)

 (1)  Individual Defendants have a history of failing to respect corporate formalities;

 (2)  Entity Defendants share key officers, legal owners, and/or equitable owners;

 (3)  Individual Defendants appoint key officers, including their own family, without regard to professional qualifications for said offices;

 (4)  Entity Defendants share employees and other resources;

 (5)  Individual Defendants control the finances of CND and ECT;

 (6)  Individual Defendants use corporate funds and resources for personal reasons;

 (7)  Defendants have a history of sharing legal representation;

 (8)  Entity Defendants are mere shells and/or conduits for Individual Defendants (SAC ¶ 46); and

 (9)  Individual Defendants have comingled the Entity Defendants' corporate funds with their own personal funds and/or funds of other businesses (SAC ¶ 43).

These allegations are not sufficient to establish alter ego liability for several reasons.  First, allegations (5) through (9) are purely conclusory because Plaintiff makes no factual allegations whatsoever to support them.  As for item (1), that Individual Defendants have a history of not respecting corporate formalities, Plaintiff alleges only that while Mark So was employed by Dogtra Korea, he used corporate resources for his personal benefit (SAC ¶ 21), but this allegation does not establish

that Van Curen is the alter ego of ECT.   Allegations (2), (3), and (4) are all fairly duplicative because they all concern the sharing of officers and resources between Defendants.  And, arguably, these factors are supported by the allegation that Mark So's son, Minchul So, is currently Vice President of ECT and an officer of CND. However, again, this does not establish alter ego as to Van Curen and  ECT.  Even if true, this fact standing alone is insufficient to establish any alter ego.  The fact that Defendants may appoint family members to corporate positions is also not relevant to the unity of interest inquiry.  Following Plaintiffs' logic, we could cast some doubt as to the unity of interest between Mark So and Dogtra since he was appointed Vice President by Dogtra's founder, who was also his brother.

Even if the Court found sufficient allegations for unity of interest, Plaintiffs do not sufficiently allege why failure to disregard the separate identities would produce inequitable results.  The only fact Plaintiffs offer in support is that the Individual Defendants may deplete corporate funds, which in turn would make it difficult for Dogtra to collect on a possible judgment.  (SAC ¶ 48.)  "California courts routinely reject the view that potential difficulty a plaintiff faces in collecting a judgment is an inequitable result that warrants application of the alter ego doctrine." *Gerritsen*, 116 F. Supp. 3d at 1144 (citations and internal quotations omitted).

Thus, since Plaintiffs have failed to sufficiently allege alter ego liability, they cannot bind Van Curen to the 2015 Tolling Agreement.

## 2.  Plaintiffs Have Not Alleged Facts Establishing that the Discovery Rule Applies.

Since Plaintiffs cannot bind Van Curen to the 2015 Tolling Agreement, they must plead facts to show why they could not have reasonably discovered his role in the alleged misappropriation of trade secrets before the statute of limitations had run.

"Under the statute of limitations, a plaintiff must bring a cause of action within the applicable limitations period after accrual of the cause of action.  Claims brought after the expiration of the limitations period are generally barred.  A claim accrues

upon the occurrence of the last element necessary to complete the claim.  The claim accrues under this traditional rule even if the plaintiff is unaware of [the] cause of action." *Migliori v. Boeing N. Am., Inc*., 97 F. Supp. 2d 1001, 1009 (C.D. Cal. 2000). "An exception to the traditional rule of accrual is the discovery rule.  The discovery rule postpones accrual of a claim until plaintiff discovers, or has reason to discover, the cause of action.  A plaintiff discovers the claim when he or she at least suspects an injury that was caused by wrongdoing.  A person has reason to suspect an injury and wrongdoing where he or she has notice or information of circumstances to put a reasonable person on inquiry.  A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her.  A plaintiff need not be aware of specific facts necessary to establish the claim. So long as a suspicion exists, it is clear that plaintiff must go find the facts; she cannot wait for the facts to find her." *Id*. at 1009.

"Once a defendant shows that the action is barred under the traditional rule, a plaintiff has the burden of showing that the discovery rule applies.  To successfully rely on the discovery rule, a plaintiff must plead and prove (a) lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and, (c) how and when he did actually discover the [claim]." *Id*.

Plaintiffs contend that they could not have reasonably discovered Van Curen's involvement in the misappropriation until late 2016, by which time the three year statute had run its course.  (*See* Opp'n at 13.)  Plaintiffs claim that Mark So had intentionally concealed Van Curen's role.  Plaintiffs also argue that Mark So took all the records that could have potentially revealed Van Curen's role to Plaintiffs.  This leads Plaintiffs to conclude that they could not have reasonably discovered Van Curen's role in the misappropriations before late 2016, when they had a chance to speak with former Dogtra employees about Van Curen's involvement.  *Id.*

Plaintiffs, however, have a very generous outlook on their own diligence.  As

noted above, Plaintiffs filed their Previous Action, in which ECT was a defendant, in April 2012.  (*See* Ex. 2.)  Van Curen was ECT's president since at least 2011, which is stated on ECT's public filings with the Indiana Secretary of State.  *See* RJN Ex. 4, p. 58.  The misappropriation alleged then appears to be the same misappropriation alleged now; indeed, Plaintiffs themselves characterize this action as "a continuation" of their Previous Action.  (*See* SAC ¶¶ 49–51.)  Plaintiffs do not explain why, in the course of three years of litigation, they were unable to propound discovery, take depositions, or conduct an investigation that could have revealed Van Curen's role in the misappropriation.  They argue that the alleged misappropriations occurred before ECT was incorporated and so they could not have known Van Curen's identity by looking at ECT's public filings which contain Van Curen's name.  (Opp'n at 15.)  While this does explain why Plaintiffs did not know of Van Curen before May 2011, which is when ECT was incorporated, it does not excuse their ignorance of his identity and role during the course of the 2012 litigation and all the time that has elapsed since its conclusion in February 2015.  The mere fact that the parties conducted little discovery in the Previous Action is not sufficient to establish that Plaintiffs acted diligently to preserve their legal claims; the opposite appears to be true.

Lastly, the Kim Declaration reveals that Van Curen appeared on behalf of ECT in the mediation proceedings for the Previous Action.  (Kim Decl. ¶ 2.)  At this point, there can be little doubt that Plaintiffs had at least a suspicion of Van Curen's involvement.  A suspicion is all that is required to trigger Plaintiffs' responsibility to go find the facts, and not wait for the facts to find them.  *Migliori*, 97 F. Supp. 2d at 1009.  Waiting for the facts to find them is precisely what Plaintiffs seem to have done.  They explain that it was only because ECT fired some former Dogtra employees that these employees were finally willing to speak to Plaintiffs.  (SAC ¶¶ 55, 106; Opp'n at 13.)  One can wonder what would have happened if these employees never left Defendants' employment.  Plaintiffs' reliance on the

1    unpredictable actions of third parties outside their control to help them discover facts

2    relevant to their own litigation is a far cry from the diligence required by the discovery

3    rule.  Because Plaintiffs have not alleged facts sufficient to establish that the discovery

4    rule may apply to their claim for misappropriation  of trade secrets against Van Curen,

5    that claim is dismissed.

6        The Court therefore finds that Plaintiffs' misappropriation of trade secrets claim

7    against Van Curen is time barred.  Therefore, the Court **DISMISSES** this claim.

8        **B. Dogtra Korea's Claim for Misappropriation of Trade Secrets Against**

9            **Defendant ECT  Is Time-Barred.**

10       ECT moves to dismiss Dogtra Korea's misappropriation claim against it as

11   barred by the statute of limitations on similar grounds: the alleged misconduct

12   occurred more than three years before the complaint was filed, and the statute of

13   limitations cannot be avoided either by the Tolling Agreement (because Dogtra Korea

14   was not a party to it) or by the discovery rule.  The Court agrees.  Because Dogtra

15   Korea is not a party to the Tolling Agreement, it cannot assert it against ECT.  *See*

16   *Siegel v. Warner Bros. Entm't, Inc.*, 542 F. Supp. 1098, 1136 n.8 (C.D. Cal. 2008)

17   (noting that the subsidiaries to the companies in that action were bound because the

18   tolling agreement *expressly* provided that its terms bound "past and present

19   subsidiaries or affiliates") (emphasis added) (quotation omitted).  Here, the Tolling

20   Agreement does not contain such an express provision and thus Dogtra Korea cannot

21   take advantage of it.  And certainly the discovery rule does not apply: ECT was a

22   defendant in the Previous Action, which included the misappropriation claim, so

23   ECT's involvement in the alleged misappropriation was known no later than April

24   2012, and there is no basis for applying the discovery rule.

25       The Court therefore **DISMISSES** Dogtra Korea's misappropriation claim

26   against ECT.

27

28

**C. Plaintiffs' Interference Claims Against Van Curen and ECT Fail.**

Plaintiffs assert claims for intentional interference with contractual relations (count 3) and intentional interference with economic advantage (count 4) against Van Curen and ECT.  Both claims fail for several reasons.

### 1.  The Interference Claims Are Barred by the Statute of Limitations.

The statute of limitations for the intentional interference is two years.  Cal. Code Civ. P. § 339(1).  The gravamen of these claims is that Defendants poached three of Dogtra Korea's Employees and used them to help misappropriate Dogtra Korea's trade secrets and, with an entity called Daehan Jeonja, design a dog collar that competes with Plaintiffs' dog collar.  (SAC ¶ 42.)  The Previous Action involved similar allegations—that Mark So teamed with Daehan Joenja to exploit Plaintiffs' misappropriated trade secrets.  Accordingly, Plaintiffs were on notice no later than April 2012, when the Previous Action was filed, that their trade secrets were being misappropriated, and they were obliged to diligently investigate that alleged misconduct and find all claims related to it, including the interference claims.  Plaintiffs again invoke the discovery rule, claiming they did not know that the Departed Employees were working with Defendants until after Defendants fired them and they became more willing to disclose the wrongdoing to Plaintiffs.  (*See* Opp'n at 17.)  But as above, these allegations do not show that Plaintiffs failed to timely discover the interference claims despite their diligent investigative efforts, but rather that this information fell into their laps.  It is also not diligent that Dogtra Korea evidently did not "connect the dots"  when three of its "senior individuals who were deeply involved in [its] R&D efforts," (SAC ¶ 124),  left its employ at around the same time Mark So started allegedly misappropriating and exploiting Plaintiffs' trade secrets, which Plaintiffs discovered no later than April 2012.  Therefore, Plaintiffs have not established that the discovery rule applies to the interference claims.   These claims are therefore barred by the statute of limitations and are **DISMISSED**.

16.

### 2. Plaintiffs Fail to Plead Facts Sufficient to Establish their Interference Claims.

In the alternative, Plaintiffs have not pled facts to establish the elements of their two interference claims.   The Court will address only the most obvious deficiencies.

#### a. Intentional Interference with Contractual Relations

To state a claim for intentional interference with contractual relations, a plaintiff must plead facts establishing the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and, (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted).

First, Plaintiffs do not plead that they had a valid contract with any of the Departed Employees.  They argue that a contract can be inferred from the employment relationship, but this does not excuse them from pleading the existence of a contract. Relatedly, Plaintiffs allude to three Departed Employees, but identify only one of them by name, *see* SAC ¶ 123; this is insufficient. *See, e.g., AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003) (granting motion to dismiss where plaintiff made only "conclusory allegations that valid 'contracts' exist between itself and an unspecified third party.")

Second, the SAC does not plead Defendants' intentional acts designed to induce a breach or disruption of the contractual relationship, or that actual breach or disruption occurred.  Plaintiffs claim the Departed Employees owed Dogtra duties of loyalty (SAC ¶ 125), but that duty is owed only during the employment.  *See Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) ("During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'").  Nor do Plaintiffs plead that the Departed Employees breached any contract by simply quitting their jobs.  If the Departed Employees were at will, for example, it would not be a

17.

1    breach for them to quit.

2         For the foregoing reasons, the claim for intentional interference with contractual

3    relations is insufficiently pled and is **DISMISSED**.

4                    **b.  Intentional Interference with Prospective Economic**

5                              **Advantage**

6         To state a claim for interference with prospective economic advantage, a

7    plaintiff must allege "'(1) an economic relationship between the plaintiff and some

8    third party, with the probability of future economic benefit to the plaintiff; (2) the

9    defendant's knowledge of the relationship; (3) intentional acts on the part of the

10   defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

11   and (5) economic harm to the plaintiff proximately caused by the acts of the

12   defendant.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153

13   (2003) (citations omitted).  A claim for interference with prospective economic

14   advantage is similar to a claim for interference with contract relations.  The main

15   difference is that, for the latter, "a contract is already in existence," while for the

16   former, "a contract would, with certainty, have been consummated but for the conduct

17   of the tortfeasor."  *Builders Corp. of Am. v. United State*s, 148 F. Supp. 482, 484 n.1

18   (N.D. Cal. 1957).

19        Simply stated, Plaintiffs fail entirely to point to some contract that would have

20   been consummated but for Defendants' alleged misconduct.  This claim, like the

21   contract claim, alleges that Defendants "disrupt[ed] Dogtra's economic relations with

22   Departed Employees."  (SAC ¶ 147.)  But those relations were already in existence,

23   they were not prospective, and Plaintiffs do not point to a contract that would have

24   been consummated but-for Defendants' conduct.  Plaintiffs also refer vaguely to

25   "corporate opportunities . . usurped from Dogtra," (SAC ¶ 148), but this does not

26   establish that Plaintiffs were about to enter into any specific contract but for

27   Defendants' conduct.  In any event, lost business opportunities do not appear to be the

28   basis of this claim; rather, the claim, as pled, seems to be that Defendants interfered

1    with Dogtra's existing relationship with its employees.  As noted, this does not
2    constitute a claim for intentional interference with prospective economic advantage.

3         Plaintiffs have therefore failed to plead a claim for intentional  interference with
4    prospective economic advantage, so this claim is **DISMISSED**.

5         **D. The Conspiracy and Unfair Competition Claims Fail.**

6         Defendants move to dismiss the conspiracy and unfair competition claims on
7    the ground that they are derivative of the misappropriation claims and interference
8    claims, and must stand or fall with them.  Plaintiffs do not argue otherwise.  Because
9    the misappropriation claims and interference claims fail, so do the conspiracy and
10   unfair competition claims, and they are **DISMISSED**.

11        **E. The Venue Motion is Denied.**

12        Defendants argue that for the interference claims, venue does not lie in
13   California because none of the conduct occurred here.  Because the Court is
14   dismissing these claims as time-barred and, in the alternative, as insufficiently pled,
15   the Court **DENIES** the venue challenge.

16   //
17   //
18   //
19   //
20   //

21
22
23
24
25
26
27
28

19.

**IV.   CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is **GRANTED** in its entirety.

This is Plaintiffs' third attempt to plead their claims.  At oral argument the Court asked Plaintiffs' counsel if there were any other facts they could plead to cure the deficiencies; he offered only to plead the names of all three employees Defendants allegedly poached, that they had employment contracts, and the terms of those contrast.  Such facts may cure certain pleading deficiencies of the interference claims, but they do not cure the statute of limitations bar that applies to all of the claims.  The Court therefore finds that any amendment would be futile, and **DISMISSES WITH PREJUDICE** all claims as pled against Greg Van Curen and E-Collar Technologies, Inc. (counts 1, 3, 4, 6, and 7), ***EXCEPT*** SOS Co., Inc.'s, dba Dogtra ("Dogtra USA") misappropriation claim (part of count 1) against E-Collar Technologies, Inc., which remains.

**IT IS SO ORDERED.**

Dated:  October 17, 2017      _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE